[Civil No. 1260. Filed November 22, 1912.]

[128 Pac. 49.]

## PAUL B. WARNEKROS, Appellant, v. CHARLES BOWMAN, Appellee.

1. BROKERS—COMPENSATION—SUFFICIENCY OF SERVICES—OPTIONAL OFFER.—A broker who undertook to negotiate a sale of stock and procured an option accepted by the seller, on which the buyer paid part of the purchase price, was not entitled to a commission on the part paid, unless the buyer's option resulted in an actual sale, since the part paid, while forming a part of the purchase price, during the life of the option, on the failure to exercise the option, carried no part of the stock, and lost its character as purchase money.

2. BROKERS—COMPENSATION—BASIS OF REASONABLE COMPENSATION.— Upon an agreement to pay a reasonable commission for the sale of stock, the price realized from the sale of the stock is a proper basis for compensation.

3. BROKERS—ACTION FOR COMMISSION—ALLEGATION OF PERFORMANCE.— In an action for services contracted to be performed, the fact that the services were performed should be alleged.

4. BROKERS—PERFORMANCE OF SERVICES—WAIVER.—The owner of stock who agreed to pay a reasonable commission for its sale and who accepted an option contract, and who, on the buyer's payment of a part of the purchase price, put the stock in escrow to be delivered to the buyer upon his final payment, did not thereby waive the requirement that the broker, to earn his commission, make an actual sale.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge. Reversed.

The facts are stated in the opinion.

Messrs. Herring & Sorin, for Appellant.

Messrs. Pickett & Pickett, for Appellee.

McALISTER, J.—Charles Bowman, appellee, brought this action in the district court of Cochise county for the recovery of $2,500 alleged to be due him by Paul B. Warnekros, appellant, as a commission for effecting a sale for the latter of

20,000 shares of the capital stock of the Great Western Copper Company. The case was tried to the court without a jury, and a judgment for Bowman for the full amount having been entered, and a motion for a new trial denied, this appeal was taken by Warnekros.

The allegations of the amended complaint on which the case was tried, after stating the residence of the parties, are as follows: " (2) That, on or about the fourteenth day of October, A. D. 1907, the defendant was the owner and possessed of 20,000 shares of the capital stock of the Great Western Copper Company, a corporation organized under the laws of the territory of Arizona. That on or about the said last-mentioned date, the defendant employed the plaintiff to negotiate the sale of, and procure a purchaser for, the said 20,000 shares of stock, for which services the defendant agreed to pay to the plaintiff a reasonable commission. (3) That, pursuant to and in accordance with the terms of said employment, the plaintiff did thereafter, on or about the eighth day of April, A. D. 1908, negotiate with and procure one C. H. Young, of Clinton, Iowa, to enter into an agreement with the defendant for an optional sale and purchase of the said 20,000 shares of stock for the sum of $100,000 as the purchase price in lawful money of the United States, by the terms of which agreement the sum of $5,000 was paid to the defendant in cash at the date thereof, and the balance of said purchase price was to be paid to the defendant in deferred payments at the option of said C. H. Young; that, pursuant to the said agreement, the 20,000 shares of the said capital stock were placed in escrow with the Consolidated National Bank of Tucson, at Tucson, Arizona, to be delivered to the said C. H. Young upon the final payment of the said purchase price. (4) That the said C. H. Young, pursuant to the terms of the said agreement and escrow, has paid to the defendant on account of the said purchase price of the said capital stock the sum of $25,000 lawful money of the United States. (5) That ten per cent of the purchase price of the said capital stock by the terms of the said agreement for the sale of said capital stock is a reasonable commission for plaintiff's services in negotiating the sale of and procuring a purchaser for the said 20,000 shares of the capital stock of the Great Western Copper Company, a corporation; and that $2,500, being ten per cent of the

amount so paid to the defendant by the said C. H. Young pursuant to the said agreement and as above set forth in paragraph 4, is now due, owing, and unpaid from the defendant to the plaintiff on account of the said employment and services rendered by the plaintiff to the defendant.''

The answer to this amended complaint consists of a general demurrer and a general denial. Before the demurrer was passed on, appellant moved for judgment on the pleadings, and the motion was denied, which was followed by an order overruling the demurrer. At the opening of the trial, the appellant objected to the introduction of any evidence in the case on the ground that no cause of action was stated in the amended complaint, which objection was overruled. During the trial the appellant again moved for a judgment on the admission by appellee, on cross-examination, that he referred to the optional agreement as the conclusion of his procurement and relied on the same as the foundation of his claim for recovery, which motion was also denied. These rulings, together with others admitting, over appellant's objection, evidence of the value of services in procuring an optional contract of sale, form the basis of the seventeen errors assigned by appellant. The sufficiency of the amended complaint was attacked by appellant by a general demurrer, the overruling of which is assigned as error, and a determination of this assignment will be decisive of the case. The amended complaint alleges that appellee was employed ''to negotiate a sale of and procure a purchaser for'' 20,000 shares of mining stock, ''for which services'' he was promised a reasonable commission. It further appears from the allegations of the complaint that appellee procured one C. H. Young to enter into an optional contract for the purchase of said stock.

There is no allegation that a ''sale was negotiated and a purchaser procured'' in accordance with the terms of the employment, unless an optional sale can be construed to be the same as a sale absolute for the purpose of recovering an agent's commission. According to the terms of this agreement, as appears from the complaint, $5,000 was paid on the date of its execution, and the remaining $95,000 was to be paid on or before specified dates, at the option of said C. H. Young. The appellant, Warnekros, was bound by its terms, and could have been compelled to convey upon receipt of the payments as

specified, but Young was in no sense required to meet the deferred obligations unless he saw fit to exercise the option. If, therefore, appellee is relying on the fact that he negotiated an optional sale of the said mining stock as a compliance with his contract to negotiate an actual sale of the same, as the foundation of his claim for a commission, he must allege, further, that the option he procured resulted in an actual sale, for "the procurement by a broker of a mere optional contract of sale does not entitle him to recover a commission in advance of a sale, when his undertaking is to effect an actual sale": *Lawrence* v. *Pederson*, 34 Wash. 1, 74 Pac. 1011; *Dwyer* v. *Raborn*, 6 Wash. 213, 33 Pac. 350; *Jones* v. *Eilenfeldt*, 28 Wash. 687, 69 Pac. 368; *Lawrence* v. *Rhodes*, 188 Ill. 96, 58 N. E. 910; *Brackenridge* v. *Claridge & Payne*, 91 Tex. 527, 43 L. R. A. 593, 44 S. W. 819; *Runyon* v. *Wilkinson, Gaddis & Co.*, 57 N. J. L. 420, 31 Atl. 390; *Walsh* v. *Gay*, 49 App. Div. 50, 63 N. Y. Supp. 543; *Benedict* v. *Pincus*, 109 App. Div. 20, 95 N. Y. Supp. 1042; *Milstein* v. *Doring*, 102 App. Div. 349, 92 N. Y. Supp. 417; *Aigler* v. *Carpenter etc. Land Co.*, 51 Kan. 718, 33 Pac. 593; 9 Cyc. 252, and cases cited; *Thomas* v. *Lincoln*, 71 Ind. 41. It does not appear from the complaint that the option given by appellant resulted in a sale. It is alleged, however, that Young paid appellant $25,000 on account of the purchase price of said stock in pursuance of the said optional agreement, and that appellee earned his commission on this partial payment, it being a part of the purchase price of $100,000. Since there is in the complaint no allegation of an actual, but only of an optional, sale and since it further fails to appear from the complaint that the option was exercised by Young, it cannot be conceded that the $25,000 paid thereon formed a part of the purchase price. It was such when paid, and remained such during the life of the option, but, if no actual sale resulted, it purchased no part of the 20,000 shares of stock, and hence lost its character as purchase money, because the actual sale, which was the service appellee was employed to perform, was not yet accomplished. Appellee's claim for a commission on the $25,000 rests upon the same basis as would a like claim on the unpaid $75,000. *Massie* v. *Chatom*, 163 Cal. 772, 127 Pac. 56.

It is obvious that, in agreeing to pay appellee a reasonable commission for performing the service named in the contract

of employment, the price realized from the sale of the stock was the proper basis to be used in determining what was reasonable. And, under the allegations of the complaint, the plaintiff, had he made a sale, would have been entitled to his commission on the full amount received by defendant for the 20,000 shares of stock. We do not, however, suggest what would be the proper measure of compensation for the service appellee alleges he did perform, namely, negotiating an optional sale, for the reason that the complaint is silent as to its value, and for the further reason that it is not the service appellee agreed to render and for which he was promised a commission. The complaint does allege the value of the services appellee contracted to perform, but such an allegation is useless in view of the fact that performance of such service is not alleged.

It is elementary that in an action for services the fact that the services were rendered must be alleged. 22 Ency. of Pl. & Pr. 1367; *Shuttuck* v. *Griffin,* 44 Tex. 566; *Brickey* v. *Irwin,* 122 Ind. 51, 23 N. E. 694.

It is argued by appellee that Warnekros waived the requirement that an actual sale be made by Bowman before earning his commission when he accepted and entered into the optional agreement, procured by appellee, with C. H. Young. We are unable, however, to see wherein the mere act of entering into and accepting the optional contract of purchase by Warnekros of itself can be construed as a waiver by him of the requirement that Bowman make the sale, or secure a binding contract of sale, before earning his commission. It is a matter of common knowledge that sales of mining stock and mining property are frequently effected through options. If a real estate owner employs a broker to negotiate a sale of and find a purchaser for his property for which he agrees to give the broker a reasonable commission, and afterward gives an option for the sale of his property to a person produced by the broker, he does not thereby waive the requirement that a sale must be effected before he is entitled to his commission. By granting the option the owner is merely helping to bring about the sale which he employed the broker to make. It is a step in that direction. It is not the end, but rather the means to an end. And such action on the part of the owner does not imply that he has made a new

contract with the broker by which he agrees to pay for something different from the services he originally contracted for, but merely indicates a channel through which he is willing to go in order that the object aimed at from the beginning by both him and the broker might be accomplished. To hold that the mere acceptance of the option is a waiver of the requirement that an actual sale be made before the commission is earned would be against the decided weight of authority. See *Lawrence* v. *Pederson,* above, and cases there cited. If an actual waiver had been pleaded, the difficulty here encountered would not have arisen.

It is insisted by appellee that the decision of this court in the case of *Mayhew* v. *Brislin,* 13 Ariz. 102, 108 Pac. 253, is controlling in this case. An examination of that case discloses that it is an action on a *quantum meruit.* Brislin had been employed to negotiate a mining deal concerning the purchase of certain mining claims, for which services he was promised a reasonable compensation. The services were performed, but Brislin was compelled to sue for his compensation, and in passing on the admissibility of evidence of payments of large sums to the seller after the completion of the deal and commencement of the suit the court used this language: A real estate broker's "contract is completed, and he is entitled to compensation, even though he be employed for the purposes of sale, when he has introduced a purchaser and his principal chooses to waive that requirement, and enters into an optional contract. The broker in such case is permitted to show that subsequent thereto the option has been exercised, and the courts allow him compensation upon the basis of the amount paid thereon." The court was merely concerned in reaching a correct basis for determining what was a reasonable compensation for a middleman's services, and it is apparent that if a deal had been effected on which large payments had been made, and others, according to the complaint, would be made as the deal called for, the proper basis on which to measure the agent's compensation would be the total amount realized from the deal, whether the payments were made before or after suit brought. The issues of both law and fact involved in that case are in no particular the same as have arisen here.

XIV Ariz.—23

The remaining errors assigned we will not discuss. They are each based on rulings of the trial court on different phases of the one question involved, and, in view of what we have said, we hold that the trial court committed error in not sustaining defendant's demurrer to the amended complaint.

The judgment is reversed and the cause remanded to the superior court of the state of Arizona in and for the county of Cochise, with instructions to sustain the demurrer.

FRANKLIN, C. J., and ROSS, J., concur.

N. B.—CUNNINGHAM, J., being disqualified and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the constitution, called in Hon. A. G. McALISTER, Judge of the superior court of the state of Arizona, in and for the county of Graham, to sit with them in the hearing of this cause.

---

NOTE.—As to the duties of brokers of stock to their clients, see note in 75 Am. Dec. 313.