218 Kan. 313 (1975)
543 P.2d 996
ALBERT E. GOERTZEN, Appellant,
v.
THE STATE DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES OF KANSAS, Appellee.
No. 47,793
Supreme Court of Kansas.
Opinion filed December 13, 1975.
Malcolm G. Copeland, of Topeka, argued the cause and was on the brief for the appellant.
Donald R. Hoffman, assistant attorney general, argued the cause, and Curt T. Schneider, attorney general, and Bruce A. Roby, of Topeka, were on the brief for the appellee.
Tom Pitner, of Topeka, and Michael C. Cavell, assistant attorney general, were on the brief amicus curiae for the state department of administration.
The opinion of the court was delivered by
HARMAN, C.:
This proceeding stems from a controversy over the demotion and subsequent dismissal of a classified civil service employee. The district court upheld rulings of the civil service board adverse to the employee with respect to both events and he has now appealed.
Appellant Albert E. Goertzen had been an employee of the state of Kansas since about 1965. On April 1, 1970, he was appointed supervisor of vocational rehabilitation at Larned State Hospital. On July 1, 1970, he was granted permanent status in that position. Prior to December 1, 1970, he had received employee evaluation ratings from his supervisors of satisfactory or higher. On March 29, 1971, he received an unsatisfactory rating for the period ending March 31, 1971. Appellant appealed that evaluation to an appeals committee which reviewed the matter on April 27, 1971. The committee upheld the evaluation effective May 21, 1971, and it notified appellant he would be reevaluated in two months.
On July 16, 1971, appellant's supervisor again rated his work unsatisfactory, purportedly for the period June 1 to July 31, 1971. Appellant promptly appealed this evaluation to the appeals committee. On July 21, 1971, Marvin E. Larson, director of the vocational rehabilitation division in the state department of social welfare and appointing authority, notified appellant he proposed to dismiss appellant from his position effective July 28, 1971. Appellant was invited to reply or appear July 28 at Mr. Larson's office in Topeka for a hearing. This hearing on dismissal was thereafter postponed by agreement of Larson and appellant's then counsel.
On July 30, 1971, a different appeals committee conducted a hearing *315 on the second evaluation and on August 6, 1971, upheld the rating given. Also on August 6, 1971, Mr. Larson advised appellant by letter that because of the two unsatisfactory ratings the division of vocational rehabilitation intended to demote him to the position of psychologist I at the Larned State Hospital, effective August 9, 1971. (At this point it may be noted that Mr. Larson apparently no longer intended to dismiss appellant from state employment as previously contemplated.) The monthly salary of a psychologist I was $39.00 less than that of the position of supervisor then held by appellant. By letter dated August 9 appellant's then counsel declined the new position but offered to accept other jobs. On August 17, 1971, Mr. Larson refused this offer and informed appellant that because he had failed to report for duty after August 9, without any request for leave or explanation, it was considered he had abandoned his position and his employment with the state was terminated pursuant to Kansas Administrative Regulations 1-11-2. This regulation provides:
"Unauthorized absence. Unauthorized and unexplained absence from work for a period of five working days shall be considered by the appointing authority and the director as abandonment of the job and a presumed resignation."
On September 10, 1971, appellant served notice he was appealing his termination to the civil service board. He requested a hearing on the merits and reasonableness of his termination. Thereafter the board conducted a hearing at which appellant's present counsel appeared but, over appellant's objection, limited its deliberations to the issue of whether appellant was entitled to appeal his termination in the light of his constructive resignation under KAR 1-11-2. On November 12, 1971, the board ruled that since appellant as a result of his abandonment action was no longer an employee of the state he had no right to an appeal hearing on the reasonableness of his dismissal.
At some time not revealed by the record but presumably after the November 12 ruling, appellant appealed the demotion action to the civil service board and requested a hearing on the reasonableness of that action. On December 21, 1971, the board summarily denied this request and ruled against appellant for the same reasons announced in the dismissal appeal.
Appellant appealed these two rulings of the board respecting his dismissal and demotion to the district court of Shawnee county. During the pendency there of these appeals the state department *316 of social welfare was reorganized and renamed the state department of social and rehabilitation services.
The district court affirmed and upheld the findings and orders of the civil service board, declining as well to go into the reasonableness of the actions of the appointing authority either in dismissing or demoting appellant, because of the latter's resignation of his job pursuant to KAR 1-11-2. Appellant brings the matter here for review.
Appellant first challenges the validity of KAR 1-11-2, asserting its promulgation by the department of administration was unauthorized by statute. Assuming that the point is properly before us, it has no merit.
In State, ex rel., v. Columbia Pictures Corporation, 197 Kan. 448, 417 P.2d 255, we held:
"Rules and regulations adopted by an administrative board pursuant to K.S.A. 77-405, et seq., to carry out a policy declared by the legislature, have the force and effect of laws.
"The power to adopt rules and regulations is administrative in nature, not legislative, and to be valid, must be within the authority conferred. An administrative rule and regulation which goes beyond that which the legislature has authorized, or which violates the statute, or which alters, extends, limits, or attempts to breathe life into the source of its legislative power, is void." (Syl. ¶¶ 3 & 4.)
(K.S.A. 77-405 to 77-414 which provided a procedure for state agencies in the promulgation of rules and regulations was amended and superseded in 1965 by K.S.A. 77-415, et seq.)
K.S.A. 75-2925 states legislative intent in creating a civil service system. Basically it is to provide all citizens a fair and equal opportunity for public service; to establish conditions of service which will attract officers and employees of character and ability; and to increase the efficiency and economy of the governmental departments and agencies by the improvement of methods of personnel administration. K.S.A. 75-3702 creates a state department of administration. K.S.A. 75-3706 (since amended) authorized the executive director of the department of administration, with the approval of the finance council, to establish and promulgate rules and regulations with respect to the exercise of the department's powers and duties. K.S.A. 75-3707 (since amended) authorized that department to exercise administrative functions of the state in particular areas, among which were:
"(11) Developing plans for improvements and economies in organization and operation of the several state agencies and installing such plans as are approved *317 by the respective heads of such agencies or as directed by law or by the governor with the approval of the finance council.
"(12) Personnel matters as to (a) recruitment, (b) working conditions, (c) terms of employment, (d) vacations, (e) sick and other leaves, (f) tenure and termination of employment, (g) pay scales, and (h) determining when and if salary ranges assigned to classified and classified exempt positions should be changed so as to either increase or decrease the cost of such employment."
K.S.A. 75-3746 and 75-3747 (both since amended) provided the internal procedures within the department of administration whereby rules and regulations were to be promulgated. Paragraph (7) of 75-3746 provided that the personnel director should recommend to the executive director rules and regulations for the purpose of carrying out the provisions of the civil service act, to include rules for standards of performance, leaves of absence with and without pay, transfers, layoffs, vacations, hours of work and other conditions of employment. By these broad rule-making grants the department of administration thus had authority to adopt reasonable rules deemed necessary to the efficient exercise of its duties. The rule in question appears reasonably related to legislative policy and the department's functions and was within its rule-making authority.
Appellant further contends KAR 1-11-2 is invalid because it conflicts with K.S.A. 75-2949 (since amended) and denies a permanent status civil service employee due process rights afforded under the normal termination method outlined therein. That statute authorizes an appointing authority to dismiss an employee for the good of the service after notice and hearing of the reasons for such action and it likewise provides for an appeal by the employee to the civil service board to determine the reasonableness of the action taken.
Courts in two of our sister states have dealt with the same contention advanced by appellant here. In Dunn v. Simon, 16 App. Div.2d 719, 226 N.Y.S.2d 812, an employee was absent from his position for more than ten working days. His employment was terminated without notice or a hearing under a rule similar to KAR 1-11-2 in that it deemed a ten day unauthorized, unexplained absence a resignation. The trial court found that the rule was void because it conflicted with a civil service statute providing for a hearing upon stated charges. After finding that the resignation rule was within the civil service commission's rule-making power the appellate court stated:

*318 "Each [the rule and the statute] was designed to provide a separate and distinct method within the State civil service complex for the severance of employment, the former by self-abdication and the latter by compulsion after a hearing upon charges of incompetency or misconduct. Respondent's contention that he was not required to explain his unauthorized absence within the 10-day period is without merit." (p. 720.)
In Baker v. Wadsworth, 6 Cal. App.3d 253, 85 Cal. Rptr. 880, a labor dispute arose between contractors working at a city plant and the union of their employees. Public employees, sympathetic with the union's position, refused to work at the plant even though they had no labor dispute with the city. A rule of the civil service commission of the city provided that an unexplained absence of seven working days would be deemed to mean an employee had abandoned his position. Provision was made for a hearing on the issue of whether the absence was excusable. The employees in Baker who were dismissed because of their absence from work pursuant to the rule contended, among other things, that the rule conflicted with the city's charter under which they had certain procedural due process rights. The appellate court first found that although authority to adopt the rule was not expressly conferred in so many words by the charter, it was implied in the broad discretionary power of the commission to administer and enforce the civil service laws. The court further found no conflict between the charter provisions and the rule, the distinction being that the charter dealt with discharge or removal for cause while the civil service commission rule dealt with abandonment or constructive resignation. The court further rejected conflict between the two based on procedural differences by pointing out that the sole issue in a hearing under the rule is whether an employee's unauthorized absence is excusable or justified.
We think the reasoning applied in the two cases just cited is sound and should be adopted here. Consequently we hold that K.S.A. 75-2949 was enacted to provide an involuntary method of termination of employment after a hearing upon charges of unfitness for a particular job while KAR 1-11-2 was promulgated to deal with cases of self-abdication of a job. The two apply to separate and distinct situations and are not in conflict.
Appellant further contends that if the rule be held valid it should not apply to him because his absence from the job was satisfactorily explained and was not unauthorized because during this time he was negotiating for another position. The matter principally relied *319 upon for this position is a letter to Mr. Larson written August 9, 1971, by appellant's then attorney in which he declined to accept the demotion to psychologist I as offered. There were other letters by appellant's attorney after he had been terminated but in all the correspondence appellant was enumerating jobs he would accept, all to be structured in accordance with appellant's wishes. There were never any counter-offers or other suggestions of jobs which might be construed as holding appellant's status in abeyance or lulling him into a position of security where he might believe he could with impunity remain away from work. The little negotiation which existed was one-sided and insufficient to avoid the crunch of the rule.
The record on appeal contains the complete minutes of the civil service board's hearing on September 23, 1971. Their reading makes it clear the board was cognizant any absence under the rule had to be both unauthorized and unsatisfactorily explained before the rule could be applied. These minutes also indicate the board's readiness to listen to any explanation for appellant's absence from the job but none was forthcoming other than his refusal to work in the demoted position. Appellant makes no contention he was denied the opportunity to present evidence or be heard on this issue. He does assert now he had no intention of abandoning his job but it cannot be denied he was heard on the factual aspect of this issue. His explanation was simply unsatisfactory in the viewpoint of the board and justifiably so. Appellant's contentions that he was improperly dismissed cannot be sustained.
We turn now to appellant's contention that the civil service board acted unlawfully in denying him a hearing on the reasonableness of his demotion. The board in its December 21, 1971, order summarily denied a hearing on this issue because it had become "fully merged ... considered, decided, and exhausted by the findings and conclusions rendered on November 12, 1971". The trial court affirmed this decision on the theory appellant had waived his right to appeal from the demotion by not remaining on the job. Appellee's argument now is that appellant had to accept the demoted position and continue working in it in order to appeal from the demotion action. No authority for this contention is cited and we know of none. Because our civil service laws grant "permanent status" to a state employee who meets certain requirements and certain benefits thereby attach (K.S.A. Chap. 75, Art. 29) that employee has an interest in continued employment which the state *320 cannot infringe arbitrarily. One of the purposes of civil service laws is to take from the appointing officer the right of arbitrary removal of an employee. This privilege not to be subjected to arbitrary removal should extend as well to demotion, especially where loss of pay is involved and indeed our statutes do so recognize this right. K.S.A. 75-2929 as it existed in 1971 provided:
"The state civil service board shall hear appeals taken to it pursuant to sections 75-2940 and 75-2949 of the General Statutes of 1949 or any amendments thereto, and shall conduct hearings and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, suspension, removal, or dismissal of such officer or employee, in accordance with the provisions of this act and acts amendatory thereof or supplemental thereto, and shall establish such rules and regulations as may be necessary to give effect thereto...." (Emphasis supplied.)
This statute was implemented by KAR 1-11-5 which, when appellant sought to appeal to the civil service board in 1971, provided:
"(d) A permanent employee who is demoted by action of the appointing authority or the director shall have the right to a hearing as provided in K.S.A. 75-2929."
We note in passing that in 1972, 75-2949 was amended to cover a demotion specifically so that it now provides:
"(2) Any employee finally dismissed, demoted or suspended may request in writing within thirty (30) days from the effective date of the dismissal, demotion or suspension a hearing before the state civil service commission to determine the reasonableness of such action and the commission shall grant the employee a hearing within forty-five (45) days after receipt of such request." (K.S.A. 1974 Supp. 75-2949.) (Emphasis supplied.)
Aside from the amendment just noted it appears that procedural due process rights of a permanent civil service employee with respect to his demotion were required at the pertinent time by statute and administrative regulations, the command of which was not followed here in that appellant was denied a hearing before the civil service board (now the civil service commission). The reason given for the refusal to hear the matter on the merits was that by his resignation under KAR 1-11-2 appellant had waived his right to any hearing. We think that regulation is inapplicable to the situation here. The demotion became effective August 9, 1971, while appellant was still an employee and his right to appeal from that action accrued at that time. We know of no reason why an employee should be required to remain on the job in order to test the reasonableness of a demotion with loss of pay and none has been suggested. (It may be noted more than four years have now elapsed since the *321 demotion action here was taken.) Our holding is that a civil service employee with permanent status who is demoted with loss of pay is not required to remain on the job in the demoted position in order to test the reasonableness of the demotion action by an appeal to the civil service commission.
The result is, that part of the judgment upholding appellant's dismissal is affirmed; that part upholding the civil service board's refusal to hold a hearing on the reasonableness of appellant's demotion is reversed and the cause is remanded with directions to the trial court to remand the proceeding to the civil service commission for a hearing on the reasonableness of appellant's demotion and other appropriate action. In further proceedings no attorney for appellee who has acted as a member of an appeals committee in this case should participate in the role of advocate for appellee (see Powers v. State Department of Social Welfare, 208 Kan. 605, 493 P.2d 590). It is so ordered.
APPROVED BY THE COURT.
SCHROEDER, J., dissenting:
I respectfully disagree with Syl. ¶ 6, subparagraph (1), and the corresponding portion of the court's opinion. When the civil service employee holding a permanent status position as supervisor of vocational rehabilitation at the Larned State Hospital (appellant herein) was demoted by his employer his permanent status position was terminated. He did not accept employment at the demoted status. He was therefore under no obligation whatever to report for work in the demoted position. Therefore, his failure to report for work is explained by the record, and his failure to report for work is immaterial to a resolution of the issue on his fitness to hold the position of supervisor of vocational rehabilitation in which he held permanent status. His right of appeal had become fixed by the demotion action taken by his employer, and he did not waive his right to appeal from the demotion action taken by his employer. His appeal from the demotion action was timely perfected and he has a right to be heard on the issue.
It is submitted the judgment of the lower court should be reversed.
OWSLEY and PRAGER, JJ., join in the foregoing dissenting opinion.
*322 KAUL, J., (dissenting in part).
I would affirm the judgment of the trial court in toto. Therefore, I dissent from paragraphs 5 and 6 (2) of the syllabus and the corresponding portions of the opinion.
FATZER, C.J., and FROMME, J., join in the foregoing opinion dissenting in part.